IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LORRIE J. PACE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-12-121-SPS |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Lorrie J. Pace requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born January 5, 1963, and was forty-seven years old at the time of the administrative hearing. (Tr. 93, 584). She completed high school and became a certified nursing assistant, and has worked as an administrative clerk. (Tr. 117-118, 602). The claimant alleged that she has been unable to work since April 30, 2008, due to diabetes, high blood pressure, depression, possible chronic obstructive pulmonary disease (COPD), neck and back pain, narcolepsy, sleep apnea, restless leg syndrome (RLS), and arthritis. (Tr. 111).

### Procedural History

On May 8, 2009, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-110), and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 31, 2011. (Tr. 22-38). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range

of light work, 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an eight-hour workday. He imposed the additional limitations that she could frequently balance, but only occasionally stoop, crouch, crawl, or kneel. Additionally, he found that she could occasionally climb stairs but never climb ladders. He noted she had some psychologically-based limitations, but that she could understand, remember, and carry out simple and some complex tasks, interact with co-workers and supervisors, and adapt to changes in the workplace. (Tr. 22-23). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, telephone quotation clerk. (Tr. 37).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider the opinion of licensed professional counselor Deborah Wall, and (ii) by failing to properly assess her credibility. The Court finds the ALJ *did* fail to properly consider Ms. Wall's opinion, and the decision of the Commissioner must therefore be reversed.

The relevant medical evidence shows that the claimant had the severe impairments of sleep apnea, narcolepsy, depressive disorder, diabetes mellitus, COPD, and mild degenerative disc disease of the lumbar spine. (Tr. 24). Dr. Gordon B. Strom conducted a consultative physical exam on June 26, 2008. (Tr. 259-260). He assessed the claimant with morbid obesity, narcolepsy, COPD with smoking abuse, peptic gastritis, sleep apnea by history, multiparous patient, and prior traumatic facial injury. His recommendation

was that the claimant would benefit from aggressive management of her narcolepsy that would help her return to work if adequate medication management were made available to her. (Tr. 260). A state reviewing physician found the claimant capable of light work. (Tr. 292). Dr. Strom assessed her again in August 2009, and his conclusion was similar to his first, that the claimant's impairments and medications made her drowsy during the day, and that she would benefit from a full psychiatric assessment. (Tr. 339). Theresa Horton, Ph.D. then conducted a mental status consultative examination of the claimant. (Tr. 267-271). She diagnosed the claimant with major depressive disorder, recurrent, severe; dysthymia, early onset; diabetes; high blood pressure; COPD; neck and back pain; and sleep apnea and narcolepsy. (Tr. 270). Her prognosis was that the claimant appeared capable of understanding, remembering, and managing simple and complex instructions and tasks, but that her thought processes were "quite slowed" which would negatively impact her pace and level of productivity. Additionally, Dr. Horton noted she appeared socially and emotionally capable of adjusting to work and social settings, but noted that she appeared very tired and had historically had problems with falling asleep at work which lead to loss of employment. (Tr. 271). A state reviewing physician found that the claimant retained the ability to work, but that her pace would be slowed due to her depression, and that she could perform simple and some, but not all, more complex instructions under routine supervision and was able to relate appropriately to the general public, co-workers, and supervisors. (Tr. 283). Another state reviewing assessment found that the claimant could understand and perform some simple tasks and some complex, could interact with others at a superficial level, and could adapt to a work

situation. (Tr. 355).

Records from Providence of Oklahoma reflect the claimant's treatment from May 2009 through August 2011. At intake, she was assessed a Global Assessment of Functioning (GAF) score of 50, and given a guarded prognosis in light of her serious issues with depression and lack of a support system. (Tr. 480). During her treatment, she was assessed GAFs ranging from 49-55. (Tr. 331-333, 400-480, 570-580). The score of 49 was assessed on June 7, 2010, due to the claimant experiencing extreme depression over a decline in health related to control of her diabetes, and an increased difficulty in taking care of herself and her home. (Tr. 417, 420-421). Dr. Richard Zielinski, who manages the claimant's medications at Providence, completed a Mental Medical Source Statement. He indicated that the claimant had severe limitations in ten areas, marked limitations in five others, and moderate limitations in four areas, and only one area with no significant limitation. (Tr. 371).

At the administrative hearing, the claimant testified that she has a driver's license but is scared to drive because she has fallen asleep and gotten into a wreck in the past. (Tr. 586). She testified that the main problems that prevented her from working were narcolepsy and sleep apnea, and that she used a CPAP machine for her sleep apnea but hers had recently stopped working. (Tr. 589). She further stated that she used to take several medications, but had to discontinue them because Medicaid would not cover them. (Tr. 590). She testified that she had been receiving mental health treatment one to two times a week since April 2009, and that the medications that she does take cause daytime drowsiness. (Tr. 590-591). She testified that arthritis makes it difficult for her to

get up and walk, and that COPD causes breathing problems – to the point that she has left her cart at Wal-Mart because standing more than fifteen minutes caused too much pain in her feet and hips.  (Tr. 593-594).  She stated that she also struggles to remember appointments, even recurring ones.  (Tr. 598).  One of the claimant's counselors from Providence, Deborah Wall, also testified at the hearing.  She stated that the claimant has trouble remembering appointments, and that she sometimes has to call to remind her, that the claimant is apologetic and attempts to make the appointments but sometimes is unable to.  (Tr. 600).  In her opinion, the claimant is not capable of full-time employment due to her depression and health issues that exacerbate each other, as well as her difficulty staying awake.  She stated that she has observed the claimant fall asleep multiple times during sessions.  (Tr. 600-601).

Social security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Wall herein.  *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1; Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that

the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The relevant factors for evaluating opinion evidence from other sources are: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v)whether the claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ gave great weight to Dr. Strom's opinion and Dr. Horton's assessment, but discounted Ms. Wall's opinion and gave it little weight because he found it inconsistent with the medical evidence despite the similarities in her assessment to Dr. Horton's assessment. (Tr. 32). Specifically, the reasons the ALJ gave for discounting Ms. Wall's opinion were that she had testified that the claimant missed several appointments, but treatment notes indicated that she consistently kept her appointments, and a 2010 notation indicated that the claimant had made progress in the level of care needed, and been able to maintain her own housing. (Tr. 33). The ALJ thus concluded, "Having canvassed the claimant's hearing testimony, along with other record evidence, the undersigned finds that her allegations of adverse symptomatology are just not believable to the extent alleged." (Tr. 36). This analysis of Ms. Wall's assessment of the claimant's RFC was deficient for two reasons.

  First, the ALJ only vaguely alluded to the above-discussed factors for evaluating "other source" opinions, and it is therefore unclear whether he properly considered them.

*See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). *See also Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008) (discussing the application of SSR 06-03p and noting that "'[o]pinions from [other sources] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"), *quoting* Soc. Sec. Rul., 06-03p, 2006 WL 2329939, at *3. *Cf. Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for *diagnosing* an impairment under the regulations, the agency has made clear that the opinion of such an 'other source' is relevant to the questions of *severity* and *functionality*. The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor.") [emphasis in original]. Second, the ALJ's finding that Ms. Wall's opinion was inconsistent in light of the other medical records is a misstatement. The ALJ interpreted the opinions of Dr. Strom and Dr. Horton as finding that she could work, while minimizing the additional treatment and medication management (currently not available to the claimant) that would make a transition to work possible. *Frantz*, 509 F.3d at 1302 (noting that SSR 06-03p "specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources' [and] instructs the adjudicator to explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion . . . allows a

claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [internal quotations omitted]. *See also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Because the ALJ failed to properly consider the "other source" opinion provided by Ms. Wall, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma